UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIRAM AHMETOVIC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 4:17-CV-02164-NCC<br>) |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | )<br>)<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Kiram Ahmetovic ("Plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*. Plaintiff filed a brief in support of the Complaint (Doc. 13), Defendant filed a brief in support of the Answer (Doc. 20), and Plaintiff filed a reply brief (Doc. 21). The Parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 10).

## I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on January 21, 2014 (Tr. 135-41). Plaintiff was initially denied on June 24, 2014, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 78-84). After a hearing, by decision dated June 17, 2016, the ALJ found Plaintiff not disabled (Tr. 15-27). On June 14, 2017, the Appeals Council issued a decision denying Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 15, 2013, the alleged onset date (Tr. 17). The ALJ found that Plaintiff has the following medically determinable impairments: right-side epicondylitis, obesity, and depression, but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526) (Tr. 17-18).[1] The ALJ demined Plaintiff has the residual functional capacity to perform medium work[2] except he can frequently use the bilateral upper extremities and he cannot have any close interaction with the public or with coworkers (Tr. 21). The ALJ found that Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that the claimant can perform including laundry worker (DOT #361.684-014) and laborer (DOT #922.687-058) (Tr. 26-27). In doing so, the ALJ determined that Plaintiff has a high school education and is able to communicate in English (Tr. 26). Thus, the ALJ found that Plaintiff does not have a severe impairment or combination of impairments, and has therefore not been under a disability from November 15, 2013, through the date of the decision, June 17, 2016 (Tr. 17, 27).

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is

---

[1] "Right-side epicondylitis" appears to be a misstatement by the ALJ, as the medical records indicate Plaintiff's impairment is to his left elbow (Tr. 501-06, 525, 561, 565, 567).

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. 404.1567(c).

2

determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the

Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff argues the ALJ erred in failing to articulate consideration of the specific functional impairments found by the state-agency medical expert, despite finding those opinions entitled to "great weight" (Doc. 13 at 6). Second, Plaintiff asserts that the ALJ erred in finding Plaintiff able to communicate in English (*Id.* at 10). Because the ALJ erred in finding Plaintiff had the ability to communicate in English and erred in concluding there were jobs in the national economy Plaintiff could obtain, the Court will address these issues alone.

The ALJ determined Plaintiff had the ability to communicate in English for two reasons. First, because a form filled out by a Social Security employee included a checked box stating Plaintiff could "speak and understand English" (Tr. 26). Second, the ALJ inferred that Plaintiff's prior employment required him to use English (*Id.*).

5

According to the Program Operations Manual System (POMS) DI 25015.010(C)(1)(b), a "person is unable to communicate in English when he or she cannot speak, understand, read, or write a simple message in English." "Although the POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law, it is nevertheless persuasive . . . . The POMS explains the meaning of Social Security Act terms as well as the meaning intended by terms appearing within the regulations." *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989) (internal citations omitted).

In this case, the record clearly establishes Plaintiff "cannot speak, understand, read, or write a simple message in English." All of the medical records indicate Plaintiff had no ability to communicate in English, and he only communicated in Bosnian (Tr. 352) ("accompanied by his son . . . who was also his translator . . . patient speaks Bosnian"); (Tr. 353, 391) ("patient is Bosnian-speaking and has no understanding of English"); (Tr. 355, 415) (unable to go over treatment options lacking a translator); (Tr. 358, 418) ("[t]ranslator present"); (Tr. 368, 428) ("Patient does not speak English. Nihada used as Bosnian translator."); (Tr. 383) ("accompanied by his daughter that acted as the interpreter"); (Tr. 390, 595) (son translating); (Tr. 477) (unable to speak English); (Tr. 492) (translator present); (Tr. 577) ("does not speak English and was accompanied by an interpreter"); (Tr. 596) ("does not speak English…interpretation through daughter in law"); (Tr. 600, 640, 646) (daughter-in-law translating); (Tr. 621, 627, 630, 633-34, 636, 639, 644) (daughter translating). In fact, the only time Plaintiff was able to communicate with a medical professional himself was with Dr. Kerich, who is Bosnian (Tr. 43). Further, Plaintiff testified through an interpreter during his hearing with the ALJ (Tr. 32, 34-36). And, Plaintiff's education was obtained entirely in Bosnia (Tr. 37-38).

The Plaintiff's work history also indicates he was unable to, and did not need to, communicate in English in his former work. The ALJ opined Plaintiff "has a past work history in an environment that was likely primarily English speaking" (Tr. 26). However, nothing in the record indicates Plaintiff communicated in English is his prior employment. In Plaintiff's Work History Report, he indicated he "cleaned the floor with machines," carried "trash bags outside of building to the dumpster," worked as a "packaging tools machine operator" where he carried "paper rolls to the machine and from the machine to the pallet," and "carried heavy ads to and from machines" (Tr. 208, 210, 211). He also indicated he never wrote reports or completed forms (Tr. 208-11). The ALJ did not inquire at the hearing about Plaintiff's use of English in his past employment, and he assumes Plaintiff's ability in error (Tr. 15-27). *See, e.g.*, *Altamirano v. Colvin*, No. ED CV 12–1862–PLA, 2013 WL 3863956, at *13-14 (C.D. Cal. July 24, 2013) ("[T]he Court does not find that plaintiff's ability to scan and label items based on 'English orders' convincingly indicates that she was untruthful about her English speaking abilities" . . . especially when "[t]he work history report further indicates that plaintiff did not 'do any writing' or 'complete reports' as part of this job.").

Finally, the form filled out by the Social Security employee is unpersuasive in establishing that Plaintiff could communicate in English. This form was created when Plaintiff applied for Social Security benefits with his son Samedin Ahmetovic as his sworn interpreter (Tr. 134). The employee noted Plaintiff did "not speak any English, son Samedin Ahmetovic had to interpret" (Tr. 169-70). The employee was the one to enter the responses on the form, and he did not obtain a signature from either Plaintiff or his son (Tr. 179-89). The employee put "Yes" for the question "Can you speak and understand English?" and "No" for the questions "Can you read and understand English?" and "Can you write more than your name in English?"

7

(Tr. 179). This marking of "Yes" is an isolated occurrence and appears to be a typographical mistake rather than an admission by Plaintiff of his English-speaking ability. Because the record provides sufficient evidence to show Plaintiff could not communicate in English, the Court finds the ALJ's finding to the contrary was in error.

Even if the ALJ was correct in his finding that Plaintiff could "communicate" in English, Plaintiff's undisputed inability to read English eliminates all of the jobs the vocational expert ("VE") testified an individual with Plaintiff's age, education, work experience, and residual functional capacity would be able to perform.

At Plaintiff's hearing, the ALJ asked the VE whether a claimant of Plaintiff's age, education, work experience, and RFC, including his limitations regarding lifting restrictions, standing and sitting needs, and restrictions on close interactions with the public and co-workers, could perform work in the national economy (Tr. 55-56). The VE opined Plaintiff could work as a laundry worker (DOT #361.684-014) or laborer store (DOT #922.687-058) (Tr. 57). After inquiry by Plaintiff's attorney, the VE testified the job of "laborer store" would be precluded if Plaintiff did not have the ability to read in English (Tr. 60). The VE was not asked if the job of laundry worker would be precluded if Plaintiff lacked the ability to read English (*Id.*).

At step five of the sequential analysis, the Commissioner has the burden to establish that a claimant maintains the RFC to perform a significant number of jobs within the national economy. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). When, as is the case here, a claimant has nonexertional limitations, vocational expert testimony is required for the Commissioner to carry her burden. *Id.* In questioning the VE, an ALJ must pose a hypothetical question which properly captures the concrete consequences of the claimant's deficiencies. *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). "A vocational expert's testimony based on a

properly phrased hypothetical question constitutes substantial evidence." *Goff*, 421 F.3d at 794. However, the VE's opinion is not binding on the ALJ[;] the ALJ must weigh a VE's opinion along with all other evidence. HALLEX I-2-5-48 (S.S.A.), 1994 WL 637379 (last updated Jun. 16, 2016). In this case, the Court finds the Commissioner has not met this burden.

Plaintiff did not meet the required DOT language ability for these occupations. Both laundry worker and "laborer store" require the same "language" ability (Level 1):

> Reading: Recognize meaning of 2,500 (two-or three-syllable words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> Writing: Print simple sentences containing subject, verb, and object, and series of numbers names, and addresses.
>
> Speaking: Speak simple sentences, using normal word order, and present and past tenses.

DOT: laborer, stores, 922.687-058, 1991 WL 688132 (4th ed. Rev. 1991); DOT: laundry worker 361.684-014, 1991 WL 672983 (4th ed. Rev. 1991). As established above, there is no evidence Plaintiff could read, write, or speak English. Even if the Court were to accept the ALJ's determination that Plaintiff could speak English, it is clearly established in the record that Plaintiff could not read English. The ALJ concluded in his opinion Plaintiff "cannot read or write more than his name in English" (Tr. 26). Even the form the ALJ credited to determined Plaintiff could "communicate" in English stated Plaintiff could not read in English (Tr. 179).

Therefore, the ALJ's reliance on the VE's testimony is unjustified because Plaintiff does not meet the requirements for the other jobs recommended by the VE and the VE never clarified the deviation in the jobs' requirements and Plaintiff's abilities. *Welsh v. Colvin,* 765 F.3d 926, 930 (8th Cir. 2014) ("When an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job

descriptions, and explained his decision to credit the VE's testimony, the ALJ has complied with SSR 00–4p, and we review his decision under the deferential substantial evidence standard.").

In sum, the ALJ erred in finding Plaintiff had the ability to communicate in English and erred in concluding there were jobs in the national economy Plaintiff could obtain. Thus, remand is required.

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole. Though the Court does not make an ultimate determination regarding Plaintiff's disability, the Court finds this case should be reversed and remanded. On remand, the ALJ is directed to reconsider Plaintiff's ability to communicate in English; to provide the vocational expert with a hypothetical question that captures the concrete consequences of Plaintiff's limitations based on the evidence as a whole; and proceed with the next steps of the sequential evaluation process.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 4th day of June, 2018.

                                                     /s/ Noelle C. Collins
                                                   NOELLE C. COLLINS
                                                   UNITED STATES MAGISTRATE JUDGE